# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **MARY ANN WILDES,** | ) |
| Plaintiff, | ) |
| v. | ) No. 16-1235-TMP |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,** | ) |
| Defendant. | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Before the Court is plaintiff Mary Ann Wildes's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying her application for disabled widow's benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-434, 1381-1385. (ECF No. 1.) The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 15.) The case was reassigned to the undersigned on March 13, 2017. For the following reasons, the Commissioner's decision is affirmed.

## I. FINDINGS OF FACT

Wildes applied for disabled widow's benefits and SSI on

---

[1] Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this action was filed.

December 13, 2012, with an alleged onset date of June 1, 2007. (R. 191-99; 200-06.) The claims were denied initially and upon reconsideration. (R. 96; 112.) At Wildes's request, an Administrative Law Judge ("ALJ") held a hearing and issued a written decision. (R. 34-43.) In her written decision, the ALJ first found that Wildes had not engaged in substantial gainful activity since the alleged onset date. (R. 36.) Second, the ALJ determined that Wildes had the following severe impairments: vision loss involving the left eye, diabetes mellitus, type II, and hypertension. (R. 36.) Third, the ALJ determined that Wildes did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 37.) The ALJ also determined that Wildes retained the residual functional capacity ("RFC") to:

> engage in work activity at the light exertional level with the following limitations. She must never climb ladders, ropes, or scaffolds. She is limited to engaging in occasional postural activities such as balancing, stooping, kneeling, crouching, and crawling. She must avoid concentrated exposure to hazards such as machinery or heights.

(R. 37-38.) In making this RFC determination, the ALJ first noted that, despite alleging an onset of disability in 2007, the evidence submitted did not reveal consistent medical care until 2013. (R. 38.) In June 2011, Wildes received treatment for acute retinal vein occlusion in her left eye. (R. 38.) In 2013, Rodney

Anderson, M.D., a State agency consultant, provided a Physical Residual Capacity regarding Wildes's limitations and opined that she could lift and carry up to twenty pounds occasionally and ten pounds frequently; could sit, stand and walk up to six hours in an eight-hour workday, and could occasionally climb ramps, stairs, ladders, ropes, scaffolds, balance, stoop, kneel, crouch, and crawl, and must avoid concentrated exposure to hazards such as machinery and heights. (R. 39.) Robert Kanard, M.D., a State agency consultant, reviewed the file at the reconsideration level and agreed with Dr. Anderson's assessment. (R. 39.) The ALJ afforded great weight to these findings because Dr. Anderson and Dr. Kanard were familiar with the disability process and their opinions were generally consistent with the other medical evidence. (R. 39.) Nonetheless, the ALJ's RFC determination accounted for additional limitations. In August 2014, Wildes received treatment from Robert Dunnebacke, M.D., a primary care physician. (R. 39.) Dr. Dunnebacke recorded Wildes's blood pressure and instructed her to follow up in three weeks regarding hypertension; Wildes presented at only one follow up appointment. (R. 39.) Dr. Dunnebacke's records indicated Wildes's hypertension improved with treatment and he never reported any complications resulting from the hypertension. (R. 39.)

In 2014, Wildes's attorney hired John Woods, M.D., to conduct an independent medical examination. (R. 40.) Wildes complained of

weakness in the bilateral hands, legs, and hips, among other ailments. (R. 40.) Dr. Woods's assessment included the opinions that Wildes could lift and carry less than ten pounds, could sit up eight hours in an eight-hour workday, and could walk and stand up to two hours in an eight-hour workday. (R. 40.) The ALJ determined that Dr. Woods was a one-time examining source, and thus his opinion was not entitled to controlling weight. The ALJ afforded little weight to Dr. Woods's opinion because it appeared to be based primarily on Wildes's subjective complaints and because his opinion was inconsistent with the other medical evidence of record, notably Dr. Anderson and Dr. Kanard's assessments. (R. 40.) In evaluating Wildes's subjective complaints, the ALJ noted that evidence in the record showing that since the alleged onset date of disability, Wildes has retained the ability to independently perform personal care needs, household tasks, drive, shop, read, and watch television. (R. 40.) Thus, the ALJ determined that inconsistencies between Wildes's allegations and the medical evidence weakened her credibility, and specifically noted that Wildes filed her claims for disability benefits in June 2012, only months after her parents's benefits and income from her children's benefits stopped. (R. 41.)

Fourth, the ALJ determined that Wildes had no past relevant work. (R. 41.) Finally, the ALJ determined that, considering Wildes's age, education, work experience, and RFC, jobs existed in

-4-

significant numbers in the national economy which she could perform. (R. 41.) Thus, the ALJ found that Wildes was not disabled. (R. 42.) The Social Security Administration's ("SSA") Appeals Council denied Wildes's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1.)

Wildes filed the instant action on August 25, 2016. (ECF No. 1.) Wildes argues that the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 22 at 15-16.) Specifically, Wildes argues that no medical evidence supports the ALJ's conclusion that Wildes could perform light work, which includes the ability to lift and carry twenty pounds occasionally and ten pounds frequently. (Id. at 16.) Wildes states that the ALJ erred in affording great weight to Dr. Anderson and Dr. Kanard, and little weight to Dr. Woods, whom Wildes asserts is a treating physician. (Id. at 16-17.) Wildes finally states that the ALJ disparaged Wildes by suggesting that the timing of the filing of her disability claims was suspect where she filed it months after her parent's and children's benefits expired, and Wildes asserts that the ALJ's "personal view of Plaintiff's worthiness was not an appropriate decisional criteria." (Id. at 18.)

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a

hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support

a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)).  Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)).  Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1).  Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

> whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity

criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C. Whether the ALJ's RFC Determination was Supported by Substantial Evidence**

Wildes asserts that no treating or examining source opined that she could lift twenty pounds occasionally or ten pounds frequently and the ALJ's RFC determination that she could perform light work was accordingly not supported by substantial evidence. (ECF No. 22 at 16.) "Light work" entails lifting twenty pounds

-9-

occasionally and ten pounds frequently. 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). It is the claimant's burden, not the Commissioner's, to prove disability through Step Four. See Watters v. Comm'r of Soc. Sec., 530 F. App'x 419, 425 (6th Cir. 2013); Siebert, 105 F. App'x at 746. In determining whether a physician is a "treating source" whose opinion is entitled to controlling weight, "the regulations make clear that a relationship based 'solely on [a claimant's] need to obtain a report in support of [a] claim for disability' does not constitute a 'treating source.' 20 C.F.R. § 416.902." Staymate v. Comm'r of Soc. Sec., No. 16-3896, 2017 WL 902136, at *3 (6th Cir. Mar. 7, 2017). In assessing a claimant's complaints regarding her symptoms, an ALJ may not "reject [an individual's] statements about the intensity and persistence of [her] pain ... solely because the available objective medical evidence does not substantiate [those] statements." Kirkland v. Comm'r of Soc. Sec., 528 F. App'x 425, 427 (6th Cir. 2013). However, in evaluating the intensity and persistence of a claimant's symptoms, the ALJ may consider "all of the available evidence from . . . medical sources and nonmedical sources" detailing how the symptoms affect the claimant. 20 C.F.R. § 404.1529(c)(1); see also Kirkland, 528 F. App'x at 427. The ALJ may consider the claimant's daily activities as one factor in the evaluation of subjective complaints. See Temples v. Comm'r of Soc. Sec., 515 F. App'x 460, 462 (6th Cir. 2013). If the frequency or

extent of the treatment sought by an individual is not comparable with the degree of the claimant's subjective complaints, then the ALJ may find the claimant's complaints inconsistent with the overall evidence of the record. See id.; 20 C.F.R. § 404.1529(a). Furthermore, modest treatment may be inconsistent with a finding of total disability. See Helm v. Comm'r of Soc. Sec., 405 F. App'x 997, 1001-02 (6th Cir. 2011).

The court first finds that the ALJ's decision that Dr. Woods was a non-treating source was supported by substantial evidence. Dr. Woods examined Wildes on one occasion, and the record indicates that the examination was scheduled because of Wildes's need to obtain a report in support of her disability claim. See Helm, 405 F. App'x at 1001 ("'The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'") (quoting Barker, 40 F.3d at 794). Wildes does not point to any additional treatment or any indication that Dr. Woods examined her on a continuing basis. Thus, substantial evidence supports the ALJ's determination that Dr. Woods was not a treating source. Because the ALJ properly found that Dr. Woods was not a treating source, his opinion was also not entitled to controlling weight. See 20 C.F.R. § 404.1527.

Accordingly, the ALJ was entitled to weigh the evidence and decide whether Dr. Wood's opinion was inconsistent with the record as a whole.

The court next finds that the ALJ's decision to afford little weight to Dr. Woods's opinion was likewise supported by substantial evidence. Specifically, the ALJ noted that both Dr. Kanard and Dr. Anderson cited motor testing results which showed that Wildes had full strength in her upper extremities. The ALJ also observed that such a finding was inconsistent with the limitations noted by Dr. Woods. Wildes asserts that Anderson and Kanard are "not identified as Doctors" in the record, "do not affix M.D. to their signatures," and that the ALJ accordingly "gave controlling weight to the opinions of two random, unidentified state employees with no discernable qualification." (Id. at 17.) To the contrary, both Kanard and Anderson are medical doctors, and are designated as such in the record. (R. 70-73.) Wildes also asserts that the ALJ erred by dismissing Dr. Woods's opinion merely "because it was evidence obtained and submitted by Plaintiff. . . . Evidence is not suspect solely because a claimant presents it any more than it would be suspect because it was procured by the government." (Id. at 18.) Again, Wildes misconstrues the ALJ's decision. As explained above, the ALJ was entitled to consider this factor in assessing what weight to assign Dr. Woods's opinion, and the ALJ properly discussed additional reasons for assigning little weight to Dr.

-12-

Woods's opinion.

Finally, Wildes asserts that the ALJ disparaged her by observing that she stopped work in 1999 when her husband fell ill and she received parent's benefits from 2000 until 2007, and thereafter applied for disability benefits. Wildes asserts that by merely stating this fact the ALJ inappropriately determined, based on her own personal view, that Wildes was not worthy of benefits. The court finds otherwise. The ALJ discussed this timeline in the context of assessing Wildes's credibility as to her alleged disabling impairments. An ALJ is not precluded from considering possible financial motivations for alleging disability. See James-Parker v. Comm'r of Soc. Sec., No. 1:11-cv-1236, 2013 WL 1150593, at *506 (W.D. Mich. Mar. 19, 2013) (citing Foster v. Astrue, 277 F. App'x 462, 466 (5th Cir. 2008); Leech v. Barnhart, 177 F. App'x 225, 228 (3rd Cir. 2006); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004); Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996)). Wildes does not cite any authority for the proposition that it was inappropriate to do so. In any event, the court finds that the ALJ's consideration of Wildes's financial motivations was not the primary reason for denying her disability claim. Rather, the ALJ discussed the lack of objective medical evidence and identified inconsistencies in the record as to Dr. Woods's evaluation and Wildes's own subjective complaints. Accordingly, the ALJ's decision was supported by substantial evidence, and will

be affirmed.

## III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

                                              s/ Tu M. Pham
                                              TU M. PHAM
                                              United States Magistrate Judge

                                              May 25, 2018
                                              Date